T.C. Memo. 2018-90

UNITED STATES TAX COURT

EDGAR PERRY AND ISA PERRY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5932-17.                            Filed June 20, 2018.

Edgar Perry and Isa Perry, pro sese.

Kimberly A. Trujillo, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  Respondent determined a deficiency in, and an accuracy-related penalty under section 6662(a)[1] on, petitioners' Federal income tax (tax) for their taxable year 2015 of $16,281 and $2,243.40, respectively.

---

[1]All section references are to the Internal Revenue Code (Code) in effect for 2015, the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]   The issues remaining for decision for the year at issue are:[2]

(1) Are petitioners entitled to deduct certain claimed miscellaneous expenses incurred with respect to a house that they owned?  We hold that they are not.

(2) Are petitioners required to include in gross income the gross amount of the distribution to which petitioner Isa Perry was entitled when she closed a certain retirement account?  We hold that they are.

FINDINGS OF FACT[3]

Petitioners resided in California at the time they filed the petition.

In addition to the house in which they resided, petitioners owned another house (petitioners' second house) in which their daughter and her family (petitioners' relatives) resided purportedly under a rental agreement dated January 15, 2011 (purported rental agreement).  The purported rental agreement showed that the term of that purported rental agreement was not fixed and that the monthly rent that petitioners' relatives were to pay to petitioners was $600. Petitioners' relatives were not required to make a security deposit under the purported rental agreement.

---

[2]At the beginning of the trial in this case, petitioners conceded that they are liable for additional tax in an amount equal to the excess advance premium tax credits received.  See sec. 36B(f)(2).  Shortly before trial, respondent conceded the accuracy-related penalty under sec. 6662(a).

[3]Unless otherwise indicated, our findings of fact pertain to the year 2015. For clarity, we sometimes refer in our findings to the year 2015.

- 3 -

[*3]  During 2015, petitioners' relatives paid petitioners at least $150 but no more than $300 purportedly as rent for petitioners' second house.  During that year, petitioners and, to a much lesser extent, petitioners' relatives spent thousands of dollars on certain home improvements and certain repairs of petitioners' second house (expenses relating to petitioners' second house).[4]

Petitioner Isa Perry (Ms. Perry) maintained certain retirement accounts with Lincoln National Life Insurance Co. (Lincoln National).  Before 2015, Ms. Perry had borrowed money on at least two occasions (two outstanding loans) from at least one of those retirement accounts (Ms. Perry's retirement account in question).  Sometime before May 5, 2015, Ms. Perry notified Lincoln National that she wanted to close Ms. Perry's retirement account in question.  On May 5, 2015, Lincoln National complied with Ms. Perry's request and closed that account.  Pursuant to a so-called contract loan endorsement (contract loan endorsement in question) that was in effect with respect to Ms. Perry's retirement account in question,[5]

---

[4]The record does not establish how much of the expenses relating to petitioners' second house petitioners paid and how much of those expenses petitioners' relatives paid.

[5]The contract loan endorsement in question  provided in pertinent part:  "If * * * Contract [Ms Perry's retirement account in question] is surrendered while there is an outstanding Contract Loan, the surrender value will be reduced by the amount of the loan plus loan interest due."

[*4] Lincoln National repaid the unpaid balances of Ms. Perry's two outstanding loans by using funds from Ms. Perry's retirement account in question. Lincoln National then made a direct deposit to petitioners' bank account at Mechanics Bank of $32,096.28, which was the balance in Ms. Perry's retirement account in question after Lincoln National (1) repaid the unpaid balances of Ms. Perry's two outstanding loans with funds from that retirement account, (2) withheld tax, and (3) made a credit of $3.45 to Ms. Perry's retirement account in question, which was a refund of a nondeductible employee contribution that Ms. Perry had made to that account (credit refund).

Lincoln National issued to Ms. Perry Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. (Form 1099-R), with respect to Ms. Perry's retirement account in question. In that form, Lincoln National showed the gross amount of the distribution to which Ms. Perry was entitled when she closed that account,[6] not the net amount that she received after the repayment of two outstanding loans that she had made from that account.

---

[6]In Form 1099-R, Lincoln National also showed tax withheld and reduced the gross amount of the distribution to which Ms. Perry was entitled when she closed that account by $3 in determining the taxable portion of that gross amount.

**[*5]** Petitioners timely filed a tax return for their taxable year 2015 (2015 return). In that return, petitioners reported total income of $134,667[7] consisting of wage income of $42,844, taxable interest income of $3, State and local tax refund income of $1,353, taxable individual retirement account distribution income of $899, pension and annuity income of $77,751,[8] rental income from Schedule E, Supplemental Income and Loss (Schedule E), of $150, unemployment compensation of $2,782, and total Social Security benefits of $10,451, $8,883 of which they reported as taxable Social Security benefits. Petitioners did not report as income any of the expenses relating to petitioners' second house that petitioners' relatives had paid.

Petitioners included Schedule A, Itemized Deductions (Schedule A), as part of their 2015 return (2015 Schedule A). In that schedule, they claimed total item-

---

[7]Although the parties stipulated that petitioners reported total income of $134,667, the income items comprised in that total amount total $2 less than that total amount. In addition, the total amount of Social Security benefits that the parties stipulated (i.e., $10,541) is $90 more than the total amount of the Social Security benefits shown in the Internal Revenue Service transcript that is part of the record. These relatively small inexplicable inconsistencies in the record do not affect our resolution of the issues presented.

[8]The $77,751 of pension and annuity income that petitioners reported in their 2015 return included the gross amount of the distribution to which Ms. Perry was entitled when she closed Ms. Perry's retirement account in question, not the net amount that she received after the repayment of certain loans that she had made from that account.

[*6] ized deductions of $62,618, which included so-called miscellaneous expenses claimed of $56,042 ($56,042 of claimed miscellaneous expenses). The $56,042 of claimed miscellaneous expenses consisted of the expenses that petitioners and, to a lesser extent, petitioners' relatives had paid for certain home improvements and certain repairs of petitioners' second house.[9]

On October 11, 2016, petitioners filed an amended tax return for their taxable year 2015 (2015 amended return). In that amended return, petitioners claimed an increase of $9,229.08 in the itemized deductions that they had claimed in their 2015.[10]

Respondent issued a notice of deficiency (notice) to petitioners for their taxable year 2015. In that notice, respondent determined, inter alia, to disallow the $56,042 of claimed miscellaneous expenses.

### OPINION

Petitioners bear the burden of establishing that the determination in the notice that remains at issue (i.e., the disallowance of the $56,042 of claimed mis-

---

[9]The record does not establish how much of the $56,042 of claimed miscellaneous expenses petitioners paid and how much of those expenses petitioners' relatives paid.

[10]In their 2015 amended return, petitioners also claimed an increase of $7,000 in the tax withheld that they had claimed in their 2015 return, thereby increasing the tax withheld that they were claiming to $19,532.16.

**[*7]** cellaneous expenses) is erroneous. They also bear the burden of proof with respect to the affirmative issue that they raised at trial involving Ms. Perry's retirement account in question; that is to say, petitioners have the burden of establishing that they are required to include in gross income for their taxable year 2015 only the net amount that Ms. Perry received from Ms. Perry's retirement account in question after she closed that account and Lincoln National repaid two outstanding loans that she had made from that account with funds from that account (less tax withheld and plus the credit refund). See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and petitioners bear the burden of proving entitlement to any deduction claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). The Code and the regulations thereunder required petitioners to maintain records sufficient to establish the amount of any deduction claimed. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

We address first whether petitioners are entitled to deduct for their taxable year 2015 the $56,042 of claimed miscellaneous expenses.[11] It appears to be peti-

---

[11]Although not clear, it appears that petitioners may be claiming that they are entitled to deduct for the year at issue an amount of miscellaneous expenses greater than the amount they claimed in their 2015 Schedule A and that respondent disallowed in the notice.

[*8] tioners' position that petitioners' second house to which those claimed expense pertain was a rental property during 2015 and that consequently they are entitled to deduct those expenses.[12]

Section 280A(a) provides that generally no deduction is allowable with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. One of the exceptions in section 280A(b) to the general rule in section 280A(a) is a deduction otherwise allowable to the taxpayer without regard to its connection with the taxpayer's trade or business or income-producing activity. As pertinent here, a taxpayer is otherwise entitled under section 164(a)(1) to deduct State and local real estate taxes.

The record contains four real estate property tax bills from Contra Costa County, California (property tax bills), on which petitioners' names appear. Two of the property tax bills are for a certain parcel of land identified therein as parcel No. 5-8 00, and the remaining two property tax bills relate to another parcel of land identified therein as parcel No. 4-2 00. Nothing in the record establishes the addresses of the respective properties to which those bills pertain. Nor does any-

---

[12]In the light of our understanding of petitioners' position with respect to the $56,042 of claimed miscellaneous expenses, we believe that petitioners should have claimed those expenses in their 2015 return in Schedule E, not in their 2015 Schedule A.

[*9] thing in the record establish that those four property tax bills were paid or if paid, by whom.

On the record before us, we find that petitioners have failed to carry their burden of establishing that they are entitled for their taxable year 2015 to deduct under section 164(a)(1) any real estate taxes with respect to petitioners' second house.

Another exception in section 280A(c)(3) to the general rule in section 280A(a) is for "any item which is attributable to the rental of the dwelling unit or portion thereof". Petitioners apparently are relying on this exception to support their position that they are entitled to deduct the $56,042 of claimed miscellaneous expenses. In order to determine whether the exception in section 280A(c)(3) applies here, we must first examine section 280A(d), titled "Use as Residence."

Section 280A(d)(1) provides that a taxpayer uses a dwelling unit during the taxable year as a residence if the taxpayer uses the unit or a portion thereof for personal purposes for the greater of (1) 14 days during the taxable year or (2) "10 percent of the number of days during such year for which such unit is rented at a fair rental." Pursuant to section 280A(d)(2)(A) and (C), a taxpayer is deemed to have used a dwelling unit for personal purposes for any day or part of that day on which the dwelling unit is used (1) for personal purposes by the taxpayer or by a

[*10] member of the family, including a lineal descendant, or (2) by any individual (except an employee with respect to whose use section 119 applies) unless for that day the dwelling unit is rented for a rental which is a fair rental under the facts and circumstances. However, section 280A(d)(3)(A) provides that a taxpayer will not be treated as using a dwelling unit for personal purposes "by reason of a rental arrangement for any period if for such period such dwelling unit is rented, at a fair rental, to any person for use as such person's principal residence."

In order for petitioners to be entitled to deduct the $56,042 of claimed miscellaneous expenses, they must, inter alia, establish that petitioners' second house was rented to petitioners' relatives at fair rental. On the record before us, we find that petitioners have failed to carry their burden of establishing that during 2015 they in fact rented petitioners' second house to petitioners' relatives. Even if we had found that petitioners had carried their burden of establishing that during 2015 they in fact rented petitioners' second house to petitioners' relatives, we would find on the record before us that they have failed to carry their burden of establishing that they rented petitioners' second house to petitioners' relatives at fair rental.

**[*11]** Based upon our examination of the entire record before us, we find that petitioners have failed to carry their burden of establishing that they are entitled for their taxable year 2015 to deduct the $56,042 (or any other amount) of claimed miscellaneous expenses with respect to petitioners' second house.

We turn now to the affirmative issue that petitioners raised at trial. It is petitioners' position that they are not required for their taxable year 2015 to include in gross income the gross amount of the distribution to which Ms. Perry was entitled when she closed Ms. Perry's retirement account in question. According to petitioners, they are required to include in gross income for that year only the net amount that Ms. Perry received after the repayment of two outstanding loans that she had made from that account. On the record before us, we reject petitioners' position.

Petitioners apparently do not understand that what Lincoln National in effect did when it used certain funds in Ms. Perry's retirement account in question to pay two outstanding loans that she had made from that account was to distribute those funds to Ms. Perry, which she then used to repay those outstanding loans. Lincoln National took that shortcut pursuant to the contract loan endorsement in question that was in effect with respect to Ms. Perry's retirement account in ques-

**[*12]** tion.[13]  That endorsement provided in pertinent part:  "If * * * [Ms. Perry's retirement] Contract [in question] is surrendered while there is an outstanding Contract Loan, the surrender value will be reduced by the amount of the loan plus loan interest due."

Based upon our examination of the entire record before us, we find that petitioners are required for their taxable year 2015 to include in gross income the gross amount of the distribution to which Ms. Perry was entitled when she closed Ms. Perry's retirement account in question.[14]

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.[15]

---

[13]See, e.g., Murtaugh v. Commissioner, T.C. Memo. 1997-319, 1997 WL 377191.

[14]Pursuant to Form 1099-R that Lincoln National issued to Ms. Perry with respect to Ms. Perry's retirement account in question, petitioners are entitled to reduce that gross amount by $3 in determining the taxable portion of that gross amount.  If respondent did not take account of that reduction in the notice, we expect the parties to take account of that reduction in computations under Rule 155.

[15]As noted above, petitioners conceded at the beginning of the trial in this case that they are liable for additional tax in an amount equal to the excess advance premium tax credits received.  Nonetheless, respondent advances arguments on brief regarding the premium tax credit issue.  In the light of petitioners' con-

(continued...)

**[\*13]** To reflect the foregoing and the parties' respective concessions,

<u>An appropriate decision will</u>

<u>be entered</u>.

---

[15](...continued)
cession, we find those arguments to be moot.